449 P.2d 112

**UTAH–IDAHO SCHOOL SUPPLY COMPANY, a Utah corporation, Plaintiff and Respondent,**

v.

**UTAH STATE BUILDING BOARD and Herbert F. Smart, Director of Finance of the State of Utah, Defendants and Respondents.**

**American Desk Manufacturing Company, Intervenor and Appellant.**

**No. 11395.**

Supreme Court of Utah.

Jan. 9, 1969.

Ollie McCulloch, Salt Lake City, for appellant.

David K. Watkiss, of Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, Phil L. Hansen, Atty. Gen., Salt Lake City, for respondents.

ELLETT, Justice.

This is an action for declaratory judgment brought by plaintiff to have a certain statute of this State construed. The appellant intervened and prosecutes this appeal from an adverse ruling by the trial court. The factual background is as follows:

The State of Utah through its Department of Finance advertised for sealed written bids for 14,847 seats to be installed in "Special Events Arena" of the University of Utah. There were·four types of seats

being considered by the proper officials, and bids were requested on all four types.[1] The State reserved the right to reject any and all bids.

Pursuant to the invitation, the following unit prices were bid: By respondent: Type 1, $23.41; Type 2, $26.36; Type 3 with modification, $22.60. By appellant: Type 4, $19.94.

While either type of seat would have given satisfactory service, there were considerable differences in the construction of the seats. The Board of Regents of the University examined the four types and decided that Type 3 was the best seat and in the long run would be the cheapest at the bid price. That board recommended to the Building Board of the State of Utah, whose duty it was to enter into the contract, that the bid of the respondent on Type 3 be accepted as the cheapest and best bid made. The Building Board then made its own investigation of the seats and the prices bid and unanimously decided that the cheapest and best bid was that of the respondent for the Type 3 seat.

A contract was about to made pursuant to that decision, when the Attorney General of Utah gave his opinion that the State would be liable to the appellant unless the bid for Type 4 was accepted and a contract made pursuant to that bid.

The funds to be used in paying for the seats were obtained by the sale of "student fee revenue bonds" issued pursuant to Title 53, Chapter 38, U.C.A.1953, as amended. The money derived from the sale of these bonds is known as "campus funds" and is held in trust to be disbursed only on resolution of the Board of Regents of the University of Utah.

After a hearing, the trial court ruled:

The building Board is the proper agency of the State to make a contract with Plaintiff for the installation of the seating and, having now determined that the said bid of Plaintiff at $301,987.98 was the best seating for the intended purpose, it is hereby directed to enter into a contract for the purchase from and the installation of such seating by Plaintiff and it is not bound to contract for the seating by the low bidder when there is a valid difference in values as has been here determined.

The judgment of the trial court should be affirmed if there is any substantial evidence to support it. There was no dispute in the evidence, and it was abundantly clear that the Board of Regents and the Building Board were desirous of having Type 3 seats installed and that they considered those seats to be a better bargain at $22.60 per seat than were Type 4 seats at $19.94 each.

1. Bidders were also invited to submit other proposals if they cared to do so, provided they specifically described the type of seat proposed.

While it is not the prerogative of the Board of Regents to enter into the contract, still their wishes should not be ignored completely by the Building Board for the simple reason that it is the Board of Regents that authorizes the trust funds to be made available to pay for the seats.

There is no claim of fraud or collusion on the part of any members of the two boards. The evidence would not sustain such a finding, nor would it sustain any finding other than that the individual members of each board were exercising their honest discretion in their efforts to make the best selection of the seats in question.

The appellant argues that our statute, Sec. 63–10–7, U.C.A.1953, as amended, compels the board to award the contract to it for Type 4 seats, inasmuch as its bid was the lowest and it had already been determined that it is responsible and qualified to do the work. The section relied upon reads as follows:

The Utah state building board shall carry out the building and expansion program of the state provided by law, as and when funds are from time to time available. The board is given power and authority to do any and all things which in its judgment may be necessary or proper for carrying out the provisions of this chapter including, but not limited to the following express powers and duties:

\* \* \* \* \* \*

(7) To make contracts for any work which the board is authorized by law to do or cause to be done; \* \* \* and provided that any contract except those for professional services to be let to the lowest bidder who in the judgment of the board is responsible and qualified to do the work. \* \* \*

\* \* \* \* \* \*

If the appellant is right in assuming that the contract must be let to the lowest bidder, it still would not be entitled to the contract unless the board decided to install Type 4 seats. The procedure followed herein was, in effect, a call for four bids, and a rejection of three of them. As to the accepted bid, the respondent was the lowest bidder. The appellant did not even make a bid on that type of seat. There could be no question about the matter if four invitations had been sent out separately. The method used in the instant matter was not unusual. The testimony of the director of the State Building Board made it abundantly clear that this procedure is frequently followed and results in a saving of time and the obtaining of more competitive bids. To limit a bid to one type of seat would induce bids only from a fraction of those who could furnish adequate seats. To invite multiple bids causes greater competition with a concomitant reduction in prices to be paid for the merchandise desired.

The judgment of the trial court is affirmed. Costs are awarded to the respondents.

CROCKETT, C. J., and TUCKETT, CALLISTER, and HENRIOD, JJ., concur.